# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SUSAN GAIL HARRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 2:13-cv-1147-SGC |
| SOCIAL SECURITY ADMINISTRATION, COMMISSIONER, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Plaintiff, Susan Gail Harris, seeks review, pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration, denying her application for Supplemental Security Income ("SSI"). Plaintiff timely pursued and exhausted her administrative remedies. (Doc. 12 at 2). This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to final, dispositive magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10). After consideration of the record and for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

## I.     FACTS AND HISTORY

Plaintiff was fifty-one (51) years old when the Administrative Law Judge ("ALJ") issued the decision denying her claim. (Tr. 28).[1] Plaintiff has at least a high school level education, having attended some college, and previously worked as a transport unit specialist, concession stand worker, cleaner, caregiver, and quality control inspector. (*Id.*).

---

[1] Citations to the transcript (Docs. 7-1 – 7-8) will appear as "(Tr. ___)" and will refer to the page numbers as they appear on the transcript. Citations to other filings in the court's record will appear as "(Doc. __ at ___)" and will refer to the page numbers assigned by the court's electronic filing system as they appear on the file-stamped documents.

Plaintiff filed her application for SSI on November 29, 2010, alleging she initially became disabled on November 20, 2010, due to pain in her back, neck, hips, right shoulder, and right knee. (Tr. 20, 24). Plaintiff's application was denied (Tr. 75-80), and she requested a hearing before an ALJ (Tr. 85-86). The hearing was held on October 29, 2012, and the ALJ denied Plaintiff's claim on December 11, 2012. (Tr. 20, 30). This denial became the final decision of the Commissioner on April 15, 2013, when the Appeals Council declined to review the ALJ's decision. (Tr. 1-5). Plaintiff filed this action on June 18, 2013. (Doc. 1).

### A. Plaintiff's Medical Records

Plaintiff's medical records reveal that she sought treatment for pain on four occasions from September 2010 through June 2012. (Tr. at 25-26). In September 2010, Plaintiff visited her primary physician, Dr. Adrienne Carter, complaining of back pain, neck pain, leg spasms, and difficulty sleeping. Dr. Carter ordered X-rays, which indicated, in part, severe degenerative disc disease at L-5 to S-1 and degenerative disc disease at C5-6. (Tr. at 196). Dr. Carter prescribed anti-inflammatory medication, a muscle relaxant, and a corticosteroid. (Tr. at 25). The records from Dr. Carter also reflect ongoing treatment for scoliosis, degenerative joint disease, and pain radiating to Plaintiff's lower extremities. (Doc. 12 at 5).

Approximately six months later in March of 2011, Plaintiff visited the emergency room complaining of chronic shoulder and back pain. (Tr. at 210). A physical exam revealed Plaintiff's neck was supple and tender and her lower back had para-vertebral tenderness and muscle spasm. (Tr. 210-212). The emergency room physician noted Plaintiff's pain improved with medication, and she was released with prescriptions for an anti-inflammatory and a corticosteroid. (Tr. 212). Soon thereafter, in April 2011, Plaintiff returned to Dr. Carter, who changed Plaintiff's prescriptions to a different anti-inflammatory and an anti-seizure medication.

(Tr. 209). The records from both the emergency room and Dr. Carter reflect Plaintiff continued to smoke cigarettes. (Tr. 209, 211). Additionally, Dr. Carter noted Plaintiff's drug screen was positive for cocaine. (Tr. 209, 190).

Over one year later in June 2012, Plaintiff returned to Dr. Carter complaining of pain. (Tr. 233). Plaintiff noted she did not attempt to fill her previous prescriptions because of the cost. However, Plaintiff further admitted that she did not look into how much the prescriptions would have cost and stated that even $5 would be too much to pay for a prescription. (*Id.*). Plaintiff also acknowledged that she continued to smoke cigarettes, drink wine and use crack cocaine. (*Id.*).

In addition, Plaintiff underwent a consultative examination performed by Dr. Prameela Goli on May 17, 2012, at the request of the Social Security Administration. (Tr. 216-24). Dr. Goli noted Plaintiff's complaints of pain and conducted a physical examination, finding limited range of motion of the shoulders, loss of lumbar lordosis, and a positive straight leg raise. (Tr. 216). Dr. Goli also detected a reduction in range of motion in the lumbar and cervical spine and observed that Plaintiff exhibited normal gait and motor strength and was able to get on and off the examination table without trouble. (Tr. 217). Dr. Goli concluded Plaintiff suffered from: (1) severe neck pain from degenerative disc disease with no radiculopathy; (2) bilateral rotator cuff tendonitis; and (3) lumbar disc syndrome. (Tr. 217).

Dr. Goli also completed a Medical Source Statement (MSS), concluding Plaintiff would be able to lift and carry 10 pounds occasionally and, during an eight hour work day, be able to stand for three hours, walk for three hours, and sit for four hours. (Tr. 220-21). Dr. Goli further opined that Plaintiff could sit for two hours without interruption, stand for between one and two hours without interruption, and walk for between one and two hours without interruption. (Tr.

221).  In addition, Dr. Goli determined that Plaintiff could walk without a cane.  (*Id.*).  Dr. Goli concluded that Plaintiff would only occasionally be able to climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, crouch, and crawl.  (Tr. 222).  Likewise, Dr. Goli concluded that Plaintiff would only occasionally be able to tolerate exposure to unprotected heights, moving mechanical parts, driving, humidity, dust odors and fumes, extreme temperatures, and vibrations.  (Tr. 223).

### B. Plaintiff's Testimony:

Plaintiff testified she is unable to work because of pain in her back, neck, right shoulder, hips, and right knee.  (Tr. 45-46).  She complained that her right knee swells and occasionally "gives out." (*Id.* at 46).  Plaintiff claimed her use of a cane on the day of the hearing was due to her knee problems.  (*Id.* at 48).  Plaintiff estimated that she could walk approximately one city block before needing to sit and rest.  (*Id.*).  Plaintiff testified her hips get numb and affect her ability to sit or stand, she could stand or sit for only fifteen minutes at a time before experiencing pain, and her back pain radiated down to her hips and legs.  (*Id.* at 46-48).  Due to shoulder pain and decreased range of motion, Plaintiff testified that her son must comb her hair, and she estimated that she could not lift a gallon of milk (*Id.* at 47, 49).  Using a ten point scale, with ten being severe and extreme pain for which she would seek emergency medical treatment, Plaintiff rated her average daily pain as a nine out of ten.  (*Id.* at 49).  Plaintiff testified she spent almost the entirety of an average day lying down due to the intensity of her pain and that she relied upon her son to care for her.  (*Id.* at 46).

### C. Vocational Expert Testimony:

During the hearing, a vocational expert testified that a hypothetical individual with Plaintiff's Residual Function Capacity could perform light work.  This work included jobs as a

4

ticket taker and cashier.  (Tr. 65-72).

## II.     STANDARD OF REVIEW[2]

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied proper legal standards.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  A district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*  It is "more than a scintilla, but less than a preponderance." *Id.*  However, a district court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* (citation omitted).

A district court must uphold factual findings that are supported by substantial evidence.  However, it reviews an ALJ's legal conclusions *de novo* because no presumption of validity attaches to an ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If a district court finds an error in an ALJ's application of the law, or if an ALJ fails to provide a district court with reasoning sufficient to determine the ALJ conducted the proper legal analysis, the district court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  However, a court's "limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the

---

[2]In general, the legal standards applied are the same whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

5

evidence." *Moore v. Barnhardt*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Bloodsworth v. Heckler*, 703 F.2d at 1239.

## III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement to a period of disability, a claimant must be disabled as defined by the Social Security Act (the "SSA") and the Regulations promulgated under the SSA, 20 C.F.R. §§ 400-99.  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" that "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1) Is the person currently employed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal the specific impairments set forth [by the Commissioner]?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do. "*Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show the other work the claimant can perform exists in the national economy in significant numbers.  *Id.*

## IV.    FINDINGS OF THE ALJ

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 29, 2010, the application date. (Tr. 22).

At Step Two, the ALJ found Plaintiff has the following severe impairments: mild acromioclavicular joint arthritis of the right shoulder; and degenerative disc disease of the lumbar spine and cervical spine. (*Id.*).

At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 23).

Before proceeding to Step Four, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 416.967(b), with the exceptions that Plaintiff could neither: (1) use her right arm for pushing, pulling, or overhead reaching and lifting; nor (2) climb, drive, or work around unprotected heights. (*Id.* at 23-28).

At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work. (*Id.* at 23).

At Step Five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs that exist in significant numbers in the local and national economies that Plaintiff could perform. (*Id.* at 28-29). Therefore, the ALJ concluded Plaintiff was not disabled and denied Plaintiff's claim. (*Id.* at 29-30).

In reaching the conclusions recited above, the ALJ found Plaintiff's descriptions of her pain to be less than fully credible, due to what he saw as inconsistencies with the objective record. (Tr. 27). For instance, In particular, despite Plaintiff's testimony that her pain forced her to spend almost her entire day lying down and to rely on her son for her daily care, other parts of the record indicated Plaintiff was able to perform tasks of daily living. Specifically, Plaintiff completed a function report stating she could prepare meals, do laundry, and go grocery shopping. (*Id.*; Tr. 162-170). Additionally, the ALJ found Plaintiff's description of her pain as a nine out of ten to be overstated in light of the record of sporadic medical treatment. The ALJ specifically found Plaintiff's testimony that she required a cane to ambulate and could not stand for longer than fifteen minutes were exaggerated. (Tr. 27). More generally, the ALJ found the Plaintiff's sporadic and conservative medical treatment unsupportive of her testimony of constant, extreme pain. (*Id.*).

The ALJ also noted that Plaintiff's social habits undermined her claims of constant, severe pain. (Tr. 27). In particular, the record included statements from Plaintiff that she could not afford to fill her prescriptions and that even $5 would constitute too much of a burden. However, the ALJ noted Plaintiff continued to smoke cigarettes, drink a bottle of wine per week, and use cocaine. While noting that Plaintiff's drug use was not a contributing factor material to the determination of disability, the ALJ impliedly found that Plaintiff's expenditures in pursuit of these vices undermined her claims regarding the severity of her pain, especially because Plaintiff's prescribed medication improved her symptoms. (Tr. 27). Plaintiff's testimony regarding her cocaine use damaged her credibility with the ALJ more generally. Plaintiff testified the last time she had used narcotics was approximately one year before the hearing and that this occasion was the only time Plaintiff had used narcotics in the preceding four years. (Tr.

8

58-59). However, the record reveals Plaintiff had used crack cocaine less than five months before the hearing and she tested positive for cocaine a year prior to that. (Tr. 27)

Finally, the ALJ gave little weight to the opinion of Dr. Goli, finding it was not supported by the results of the physical examination. In particular, the ALJ noted Plaintiff had no trouble getting on and off the examination table, demonstrated normal gait and motor strength, and suffered only a slight reduction in range of motion in the lumbar and cervical spine. (Tr. 26). Additionally, the ALJ found Dr. Goli's opinion to be contradicted by the record as a whole. (*Id.* at 27-28).

## V.    ANALYSIS

In general terms, Plaintiff contends the ALJ applied improper legal standards to Plaintiff's claims and the ALJ's denial of benefits was not based on substantial evidence. (Doc. 12 at 1). The primary focus of Plaintiff's arguments is the ALJ's rejection of Dr. Goli's opinion, which Plaintiff contends indicated she was disabled. (Doc. 12 at 8-14).[3] In support of her general argument, Plaintiff contends: (1) Dr. Goli's opinion regarding Plaintiff's functional ability was supported by the physical examination contrary to the ALJ's decision; (2) nothing supported the ALJ's finding that Plaintiff was limited to light work; (3) the ALJ impermissibly substituted his opinion for that of the medical and vocational experts; (4) the ALJ should have contacted Dr. Goli for clarification of the record; and (5) the ALJ improperly rejected the opinions of Plaintiff's examining physicians. (*Id.*). Each of Plaintiff's arguments are addressed in turn, although not in order, below.

---

[3] This contention appears to be based on the fact that the ability to do light work requires a good deal of walking or standing, occasional lifting and carrying of up to twenty pounds, and frequent lifting and carrying objects of up to ten pounds. 20 C.F.R. § 416.967(b). Conversely, Dr. Goli opined that Plaintiff could stand and walk for a total of six hours out of an eight hour day and that she could occasionally lift and carry no more than 10 pounds. (Tr. 220).

### A. <u>Evidence Bearing on Dr. Goli's Opinion</u>

First, Plaintiff contends the ALJ's rejection of Dr. Goli's opinion, as unsupported by the physical examination, was improper. (Doc. 12 at 8). In support, Plaintiff states Dr. Goli's May 17, 2012 consultative examination revealed: (1) limited range of motion of the shoulders; (2) loss of lumbar lordosis; (3) a positive straight leg raise; (4) Plaintiff's flexion and extension was limited due to pain; and (5) x-rays demonstrating degenerative changes to Plaintiff's cervical and lumbar spine. (Doc. 12 at 8). While Plaintiff is correct that Dr. Goli's physical examination yielded the aforementioned findings, the examination also resulted in findings undermining Dr. Goli's ultimate opinion. In particular, Dr. Goli noted that, aside from her shoulder, lumbar spine, and cervical spine, Plaintiff's range of motion was normal. (Tr. 216). Likewise, Dr. Goli found Plaintiff retained normal strength in her upper and lower extremities and she had no difficulty getting onto the examination table. (Tr. 216).

The ALJ determined an RFC for light work was supported by the record as a whole. (Tr. 28). The ALJ further noted:

> The claimant does experience some limitations, which the [light work RFC] accounts for and describes. The overall evidence indicates that while the claimant's condition restricts her ability to perform some work-related activities, her condition does not preclude all substantial work activity.

(Tr. 28). The ALJ's factual findings are reviewed under the substantial evidence standard: evidence "a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, 703 F.2d at 1239. A reasonable person reviewing Dr. Goli's contradictory examination findings could conclude they did not support Dr. Goli's ultimate opinions regarding Plaintiff's physical abilities. Accordingly, the ALJ's decision is not due to be overturned on this ground; this conclusion is reaffirmed in light of the entire record, as explained in more detail below.

On a related note, Plaintiff contends the ALJ improperly discounted the opinions of Plaintiff's treating and examining physicians. (Doc. 12 at 11). As an initial matter, to the extent Plaintiff is referring to Dr. Goli's opinion, it must be noted that, as a one-time consultative examiner, her opinion is not entitled to controlling weight or owed deference. 20 C.F.R. § 416.927(c)(2); *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Additionally the opinions of one-time examiners may be discounted based on inconsistencies with the record as a whole or any factor contradicting the opinion. 20 C.F.R. § 416.927(c)(3)-(6). Moreover, an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981).

Here, the record includes evidence contradicting Dr. Goli's opinion, including notes from Plaintiff's subsequent June 5, 2012 visit to Doctor Carter—her treating physician—which revealed no joint deformities, normal strength and good range of motion in all areas. (*Compare* Tr. 234 *with* Tr. 216). Additionally, Plaintiff denied neck pain or stiffness at this visit, directly contradicting her statements to Dr. Goli. (Tr. 216, 234). Accordingly, the ALJ did not err in rejecting Dr. Goli's opinion regarding Plaintiff's physical abilities. *Oldham*, 660 F.2d at 1084; 20 CFR § 416.927(c)(3)-(5).

### B. The ALJ's Conclusion Regarding Plaintiff's Ability to Perform Light Work

Next, Plaintiff challenges the ALJ's conclusion that Plaintiff's RFC allowed for light work. Plaintiff contends there was no support for this conclusion in the record. (Doc. 12 at 8). Rather, as Plaintiff would have it, "the ALJ simply substituted his opinion for that of the medical experts of record." (Doc. 12 at 9). In a related argument, Plaintiff contends the ALJ should have re-contacted Dr. Goli for clarification rather than rejecting Dr. Goli's opinion. (Doc. 12 at 10). Each argument is addressed in turn.

First, Plaintiff contends there is no support in the record for the ALJ's finding that Plaintiff could perform light work. (Doc. 12 at 8). However, Defendant points to various portions of the record supporting the ALJ's conclusion, including: (1) the contradictory portions of Dr. Carter's and Dr. Goli's physical examinations outlined above; (2) Plaintiff's activities of daily living; (3) the testimony of the vocational expert; (4) Plaintiff's infrequent and conservative medical treatment; and (5) Plaintiff's success with treatment. (Doc. 13 at 7). These were precisely the portions of the record the ALJ relied upon in giving less weight to Dr. Goli's opinion. Additionally, as mentioned above, the ALJ found Plaintiff's testimony regarding her condition to be less than credible. In light of this evidence, Plaintiff's contention that the record did not include any support for the ALJ's determination that Plaintiff could perform light work is incorrect. Moreover, the foregoing constitutes substantial evidence that Plaintiff could perform light work. Accordingly, the ALJ did not err in determining Plaintiff's RFC allowed light work.

Next, Plaintiff contends the ALJ simply substituted his opinion for those of the medical and vocational experts in the record. (Doc. 12 at 9-10). An ALJ is not permitted to "arbitrarily substitute his own hunch or intuition of diagnoses of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992) (Johnson, J. concurring specially). However, Dr. Goli's conclusion regarding Plaintiff's physical abilities was not a diagnoses; it was an opinion regarding the type of work Plaintiff could do.

An ALJ may discount a doctor's opinion, including a treating doctor's opinion, when the doctor fails to provide objective medical evidence to support his or her opinion or if the doctor's opinion is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Moreover, opinions on some issues, such as the claimant's RFC and whether the claimant is "disabled" or "unable to

work," "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d).

While an ALJ must consider a doctor's opinion regarding a claimant's abilities, the ultimate decision regarding the RFC rests with the ALJ in light of the entire record. *Robinson v. Astrue,* 365 Fed. App'x 993, 999 (11th Cir. 2010) ("determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."); *see also Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007). Accordingly, the ALJ did not err by sifting through the conflicting evidence and opinions and determining Plaintiff could perform light work; indeed, this is the essence of the ALJ's task. Moreover, the ALJ's conclusion was supported by substantial evidence. As such, the ALJ's determination that Plaintiff could perform light work was proper.

Next, Plaintiff contends the ALJ should have re-contacted Dr. Goli for clarification rather than discounting the opinion. Plaintiff cites 20 C.F.R. §416.919p as authority in support of this argument. (Doc. 12 at 10). However, the regulation Plaintiff cites applies to instances in which a Consultative Examiner's report was inadequate or incomplete. 20 C.F.R. §416.919p. In this instance, the ALJ did not find Dr. Goli's report to be inadequate or incomplete under 20 C.F.R § 416.919n(c). Rather, the ALJ found Dr. Goli's opinion to be inconsistent with the record as a whole and rightly afforded it little weight. *See Shaw v. Astrue*, 392 Fed. App'x 684, 688-89 (11th Cir. 2010) (doctor's opinion properly afforded less weight where it was not supported by the record); *Davison v. Astrue,* 370 Fed. App'x 995, 997-98 (11th Cir. 2010) (ALJ not required to re-contact doctor that performed consultative examination where the report was complete but unsupported by the record as a whole).

Finally, Plaintiff notes the role of ALJ is inquisitorial rather than adversarial and contends the ALJ should have developed the record further (Doc. 12 at 11-13).  However, as evidenced by the foregoing analysis, review of the record reveals the ALJ properly considered the evidence and further developed the record during the hearing.[4]

For all of the foregoing reasons, the ALJ did not err in determining Plaintiff's RFC allowed for light work.

## V. CONCLUSION

Plaintiff fails to show the ALJ erred in his consideration of Dr. Goli's opinion or in the weight he afforded the opinion.  Because the Commissioner's decision is based on substantial evidence and the ALJ applied proper legal standards, it is due to be **AFFIRMED** and this action is due to be **DISMISSED WITH PREJUDICE**.  A separate order will be entered.

**DONE** this 30th day of September, 2014.

*Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE

---

[4] To the extent this argument implies the ALJ applied improper legal standards in finding Plaintiff's testimony was not entirely credible, it fails.  An ALJ may properly discount testimony that is inconsistent with other portions of the record.  *E.g. Lorenzi v. Comm'r Soc. Sec. Admin,* 550 Fed. App'x 855, 857 (11th Cir. 2013).  Additionally, a district court's "limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence."  *Moore v. Barnhardt*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Here, the ALJ's determination that Plaintiff's testimony was not entirely credible is supported by substantial evidence, as set forth above.